IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TSVETOMIR SIMEONOV, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> JASON WOJDYLO, Acting United States Marshal for the Northern District of Illinois, ) <br> ) <br> ) <br> ) <br> Respondent. ) | No. 19CV 05062 <br><br> Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

Before this Court is Petitioner Tsvetomir Simeonov's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Following a hearing, the presiding magistrate judge certified Simeonov for extradition to Bulgaria for multiple firearms offenses and committed him to the custody of the U.S. Marshal. In his petition, Simeonov challenges the magistrate judge's order on three separate grounds. Simeonov's challenges, however, are without merit and the petition for a writ of habeas corpus is denied.

## BACKGROUND[1]

The events underlying the present petition began nearly twenty years ago in Bulgaria. On December 20, 2001, Bulgarian authorities searched Simeonov's home and found four partially disassembled firearms, as well as bullets and other supplies necessary to operationalize the

---

[1] Factual determinations by magistrate judges are adopted unless a petitioner offers evidence showing they are clearly erroneous. *Burgos Noeller v. Wojdylo*, 922 F.3d 797, 804 (7th Cir. 2017). On the points summarized below, Simeonov has offered no such evidence. Accordingly, the factual background is derived from the record established before the magistrate judge. In addition, uncontested facts from Bulgaria's extradition request, provided in Exhibit A of the Respondent's Brief (ECF No. 11-5), are included where necessary.

firearms as Makarov pistols. *Matter of Extradition of Simeonov*, 2019 WL 2994521, at *1 (N.D. Ill. July 9, 2019). Simeonov was arrested and charged with (1) unlawfully manufacturing and repairing gas pistols into Makarov pistols, in violation of Article 337, paragraph 1 of Bulgaria's Criminal Code and (2) unlawfully acquiring and holding remanufactured Makarov pistols and ammunition, in violation of Article 339, paragraph 1 of Bulgaria's Criminal Code. *Id.*

After attending his first five court hearings, Simeonov left Bulgaria and came to the United States. *Id.* Ultimately, he settled in Chicago. The criminal proceedings continued in Bulgaria in his absence, with Simeonov represented by defense counsel. On November 19, 2004 the Bulgarian court convicted Simeonov of both charges *in absentia* and sentenced him to a total of seven years and six months of imprisonment. *Id.*

Pursuant to 18 U.S.C. § 3184 and the relevant Treaty between the countries, the government of Bulgaria submitted a request to the United States for Simeonov's extradition in 2017. *See* Ex. A, EXT-SIMEONOV 00001, ECF No. 11-5; s*ee also* Extradition Treaty Between the Government of the United States of America and the Government of the Republic of Bulgaria, and the Agreement on Certain Aspects of Mutual Legal Assistance in Criminal Matters Between the Government of the United States of America and the Government of the Republic of Bulgaria (collectively, the "Treaty"). U.S.-Bulg., Sept. 19, 2007, S. TREATY DOC. No. 110-112 (2008). After receiving additional information from Bulgaria in early 2019, the United States government filed an extradition complaint (Case No.19 CR 344) in the U.S. District Court for the Northern District of Illinois and obtained a warrant for Simeonov's arrest. *See* Ex. A, EXT-SIMEONOV 00001, ECF No. 11-5; *see also Simeonov*, 2019 WL 2994521, at *1. Shortly thereafter Simeonov was arrested and committed to federal custody pending the extradition decision. *Simeonov*, 2019 WL 2994521, at *1. The magistrate judge held an extradition hearing and issued an order granting the

government's request for a Certification of Extraditability. *See id.* at *6. Seeking review of the order, Simeonov filed a petition for a writ of habeas corpus in this Court.

## DISCUSSION

### I. Habeas Corpus Review in Extradition Proceedings

Orders certifying extradition are not appealable as of right under 28 U.S.C § 1291, but parties seeking review may file a petition for a writ of habeas corpus in district court. *See Burgos Noeller v. Wojdylo*, 922 F.3d 797, 803 (7th Cir. 2019) ("Courts have long recognized an alternative path for appellate review, through a petition for a writ of habeas corpus under 28 U.S.C. § 2241."). The judicial role is limited throughout the extradition process, however, and habeas corpus review of extradition certification is no exception. *See id.* at 802–803 ("[T]he judicial role is narrow . . . The discretion in the process belongs to the executive branch, not the judiciary.").

A deferential standard of review follows from the court's limited role. District and appellate courts review factual findings by the magistrate judge for clear error and legal rulings de novo. *Id.* at 804. The standard ensures that habeas corpus review does not become a re-litigation of the extradition hearing. *See Eain v. Wilkes*, 641 F.2d 504, 508 (7th Cir. 1981) ("The district judge is not to retry the magistrate's case.").

District court review is not only deferential, but also circumscribed. *See Burgos Noeller*, 922 F.3d at 803. In 1925, the Supreme Court first articulated the limited scope of review in *Fernandez v. Phillips*, stating, "habeas corpus is available only to inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there is any evidence warranting the finding that there was reasonable ground to believe the accused guilty." 268 U.S. 311, 312 (1925). *Fernandez*'s "reasonable ground"

language is equivalent to the more common "probable cause" standard used in federal preliminary hearings. *Burgos Noeller*, 922 F.3d at 803.

While still limited, the scope of habeas corpus review in extradition cases expanded after *Fernandez* to match the general expansion of habeas corpus review. Previously confined to jurisdictional questions, habeas corpus review now allows consideration of potential constitutional violations. *See Matter of Burt*, 737 F.2d 1477, 1484 (7th Cir. 1984) ("Only subsequent to *Fernandez* did the Supreme Court substantially redefine the scope of habeas corpus review, which previously had been tied to an examination of jurisdictional defects, to include an evaluation of whether the petitioner is being held in violation of any of his or her constitutional rights."). As a result, in addition to the inquiries outlined in *Fernandez*, courts reviewing habeas petitions in extradition proceedings have "the authority to consider not only procedural defects in the extradition procedures that are of constitutional dimension, but also the substantive conduct of the United States in undertaking its decision to extradite if such conduct violates constitutional rights." *Id.*

In sum, four categories of argument are available to petitioners seeking review of extradition proceedings. The three inquiries articulated in *Fernandez* remain open: whether the magistrate had jurisdiction, whether the offense charged is within the treaty, and whether there is any evidence warranting the finding of probable cause that the petitioner is guilty of the offenses charged. In addition, petitioners may bring challenges alleging constitutional violations.

## II. Petitioner's Challenges

In his petition, Simeonov mounts three challenges, all of which fall short. First, he argues that he was not provided ample opportunity to present evidence in his extradition hearing. This challenge falls within the category of procedural defects presenting potential constitutional

problems. Second, Simeonov argues that the magistrate failed to meet the probable cause standard. This evidentiary challenge fits straightforwardly within the third prong of the *Fernandez* framework. Finally, Simeonov contends that Bulgaria failed to comply with the documentary requirements of the treaty. Courts have considered arguments of this sort under *Fernandez*'s second category of permissible review, whether the offense at issue is within the relevant treaty.

### A. Opportunity to Present Explanatory Evidence

First, Simeonov argues that he was not afforded an opportunity to present evidence explaining the existence of disassembled firearms in his home. Simeonov states the firearms "were disassembled in order to clean them, and that he had no intent to convert the gas pistols into a firearm capable of shooting ammunition." *See* Pet. 5, ECF No. 1. Although Simeonov correctly identifies a procedural right owed to extradition defendants, the record directly contradicts the contention that he lacked the requisite opportunity.

Extradition defendants are granted due process rights, but those rights are limited to match the limited aims of extradition hearings. *See Eain*, 641 F. at 511 (explaining that due process rights are constrained so as not to "convert the extradition into a full-scale trial, which it is not to be"). The rule of partial process rights holds true in the presentation of evidence context: extradition defendants lack the "right to contradict the demanding country's proof or to pose questions of credibility as in an ordinary trial," but they possess "the right to offer evidence which explains or clarifies that proof." *Id.*

In the present case, Simeonov was afforded multiple opportunities to present explanatory evidence but declined to exercise this right. First, Simeonov had the opportunity to submit a brief in opposition to the Government's extradition complaint. After obtaining an extension of time to respond premised on the potential for incorporating information obtained from a Bulgarian

attorney, Simeonov filed a brief making no reference to any such information or to any other evidence Simeonov sought to bring before the court. The magistrate judge then *sua sponte* gave Simeonov the opportunity to revise his brief and include explanatory evidence after the magistrate judge determined that the initial version did "not include any citations to the record even for factual assertions within it." *See* Minute Entry, *Matter of Extradition of Simeonov*, No. 19 CR 344 (N.D. Ill.), ECF No. 8. Simeonov responded that "the inadequate submission by the Republic of Bulgaria . . . is lacking and thus makes it impossible" to cite to the record and sought to present no evidence to explain or clarify the evidence presented in the extradition request. At a telephone status hearing on June 28, 2019, Simeonov's counsel confirmed that he had "no further arguments" and "nothing to add." Hearing Tr. 6/28/19, ECF No. 11-3, at 3:5-15. And finally, at the extradition hearing itself, on July 1, the magistrate judge asked Simeonov directly whether he had anything else to add. Simeonov's attorney replied, "Nothing additional, Your honor." See Transcript of Proceedings – Extradition Hearing as to Tsvetomir Simeonov, *Matter of Extradition of Simeonov*, No. 19 CR 344 (N.D. Ill.), ECF No. 35. In light of this record, Simeonov's claim that he did not have an adequate opportunity to present explanatory evidence borders on the frivolous.

**B. Probable Cause**

Next, Simeonov argues that the evidence before the magistrate judge was insufficient to support a finding of probable cause.[2] Reviewing courts do not independently determine whether a

---

[2] Simeonov also argues that the probable cause finding was based on factual error, but this argument is inapposite. *See* Pet. 5, ECF No. 1. In the extradition context, the probable cause finding and supporting evidence cited by the magistrate judge are not "findings of fact." *See Caplan v. Vokes*, 649 F.2d 1336, 1342 n. 10 (9th Cir. 1981) ("The 'Findings of Fact' entered in the extradition court do not constitute true findings of fact in the sense that the court has weighed the evidence and resolved disputed factual issues…[T]he findings of the extradition court serve only the narrow function of indicating those items of submitted evidence on which the decision to certify extraditability is based.") (citations omitted). As a result, the district court need not review each

finding of probable cause is merited, instead they ask only "whether there [was] any competent evidence to support [the] finding" made by the magistrate judge. *Bovio v. United States*, 989 F.2d 255, 258 (7th Cir. 1993); *see also Fernandez*, 268 U.S. at 312. That bar is met for each of the two charges under review.

As to the Article 337 charge for illegally manufacturing firearms, Simeonov makes no argument targeted to this conviction specifically, and Bulgaria's extradition request provided more than enough competent evidence to warrant the finding. It includes officers' statements regarding Simeonov's known participation in the weapons trade and information they received regarding his involvement in an upcoming firearms sale. *See* Ex. A, EXT-SIMEONOV-00203, ECF No. 11-5. It provides testimony from the gun shop owner that Simeonov had purchased gas pistols the day before the arrest and that he had purchased approximately 25 gas pistols over the prior three to four months. *See id.* at 00199. It contains a report from a ballistics expert that, consistent with the conversion of gas pistols into Makarov pistols, the gas tubes of the pistols found in Simeonov's house had been replaced with rifle barrels. *See id.* at 00173. Given the length of Bulgaria's extradition request, the list could go on. The evidence recited here, however, is sufficient to affirm the magistrate judge's finding as to the Article 337 offense.[3]

Simeonov's evidentiary challenge targets only the existence of probable cause for the Article 339 offense. The analysis as to that conviction is only slightly more difficult and the result

---

individual piece of evidence referenced for error. Rather, the role of the district court is to review *the record* before the magistrate judge to determine if there was "any competent evidence to support [the] finding." *Bovio v. United States*, 989 F.2d 255, 258 (7th Cir. 1993). The magistrate judge's summary of the evidence submitted is helpful in conducting this review, but it does not take the place of the record.

[3] Even allowing Simeonov's contention that the pistols were in the process of being cleaned, not converted, the record would still provide the magistrate judge with evidence warranting a finding of probable cause.

is the same. Article 339 criminalizes the "hold[ing]" of select weapons (including firearms) or ammunition. *See* Ex. A, EXT-SIMEONOV 00148. The ballistics report provided by Bulgaria states that to complete the conversion of gas pistols into Makarov pistols capable of firing rounds "only minimal knowledge on the structure of the 'Makarov' pistol is needed, and the presence of metal cutter and manual tools for metal working." *See* Ex. A, EXT-SIMEONOV 00173. Simeonov argues that there was not a sufficient basis in the extradition record for the magistrate to find probable cause that while in possession of the nearly completed pistols, Simeonov was holding illegal firearms. Reply, ECF No. 12, at 2 (the disassembled and converted air gun components required "additional repair works to become fully ready for use.").

Simeonov's question—at what point in the assembly process disparate parts become the relevant product—can only be answered with reference to a particular statutory scheme. For example, the question can be easily answered based on federal law. For purposes of federal firearms offenses, a "firearm" includes "any weapon . . . .***which . . . may readily be converted*** to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3) (emphasis added). And there is evidence that Bulgarian prosecutors considered this issue with respect to Bulgaria's Criminal Code: the record contains a certified copy of a decree from the regional prosecutor's office, which states that because Simeonov possessed all the knowledge and tools necessary to complete the conversion, his possession should be considered a "completed criminal action[ ]" for the purposes of Article 339. *See* Ex. A, EXT-SIMEONOV 00085. The argument appears to have satisfied the Bulgarian court, which found Simeonov guilty of both charges. *See* Ex. A EXT-SIMEONOV 00072–73.[4]

---

[4] Crediting certified foreign conviction in probable cause determinations follows from the principles of comity that guide extradition procedures. *See Spatola v. United States*, 925 F.2d 615,

Keeping in mind that "extradition proceedings are not vehicles for United States federal courts to interpret and opine on foreign law," this Court finds that the considered judgment of the Bulgarian prosecutors and courts is probative of the answer to the question of statutory interpretation. *Burgos Noeller v. Wojdylo*, 922 F.3d at 805–806 (declining to assess the petitioner's challenge to the validity of an arrest warrant). Taken together with the ballistics report documenting the minimal work remaining to make the guns operable, the Court finds sufficient evidence to warrant the magistrate judge's finding of probable cause with respect to the Article 339 offense.

There is, in any event, an alternative basis for resolving the probable cause question with respect to the Article 339 offense: Simeonov's undisputed possession of ammunition in violation of Article 339. *See* Ex. A, EXT-SIMEONOV 00081 (stating that along with the Makarov pistols, police found "5 units of ball cartridges for AK," "4 units, cartridges" for a caliber 9x 18 mm gun (like the Makarov pistol), and "a cartridge" for a caliber x 35 mm gun). While this ammunition was not the focus of Bulgaria's extradition request or Simeonov's trial, the evidentiary support for

---

618 (2d Cir.1991) ("To hold that such convictions do not constitute probable cause in the United States would require United States judicial officers to review trial records and, consequently, substitute their judgment for that of foreign judges and juries. Such an inquiry would be inconsistent with principles of comity."). Doing so in the context of an *in absentia* conviction is more controversial, but the Seventh Circuit has endorsed the concept. *Compare Esposito v. I.N.S.*, 936 F.2d 911, 914 (7th Cir. 1991) (finding that, in the related context of deportation, "*in absentia* convictions properly constitute probable cause to believe that the petitioner is guilty of the crimes in question"), *and Lindstrom v. Gilkey*, 1999 WL 342320, at *10 (N.D. Ill. May 14, 1999) (applying *Esposito*'s holding in the extradition context), *with In Matter of Extradition of Ernst*, 1998 WL 395267, at *7 (S.D.N.Y. July 14, 1998) ("[W]here, as in this case, the conviction is the result of a trial *in absentia*, the conviction is regarded merely as a charge, requiring independent proof of probable cause.").

Simeonov's possession of the ammunition is straightforward, unchallenged, and therefore suffices to establish probable cause for the Article 339 charge.[5]

### C. The Treaty's Documentary Requirements

Finally, Simeonov argues that Bulgaria's extradition request did not adequately document compliance with the Treaty's requirements, specifically the requirement that individuals be informed of the possibility that they may be tried *in absentia* and consequently extradited. *See* Pet. 5, ECF No. 1. Again, Simeonov correctly identifies a category of challenge that courts can hear on habeas corpus review, but the problem with Simeonov's argument is that there is no such requirement in the Treaty.

Challenges questioning "whether the treaty's documentary requirements have been met" fall within "the second category of permissible challenges under *Fernandez v. Phillips*, whether the offense charged falls within the treaty." *Burgos Noeller*, 922 F.3d at 805. Any ambiguity in the text of the treaty, however, "should be liberally construed so as to effect the apparent intention of the parties to secure equality and reciprocity between them." *Burgos Noeller*, 922 F.3d at 803 (quoting *Factor v. Laubenheimer*, 290 U.S. 276, 293 (1933)).

Here, the Treaty contains no requirement that individuals be informed of the possibility that they may be tried *in absentia*. The Treaty does require additional documentation for the extradition of persons convicted *in absentia*, namely "information regarding the circumstances under which the person was absent from the proceedings." *See* Ex. A, EXT-SIMEONOV-00036-

---

[5] As the magistrate judge also observed, Simeonov's flight from Bulgaria mid-trial also constitutes evidence supporting the determination of probable cause. *Matter of Extradition of Simeonov*, 2019 WL 2994521, at *3 (citing *Matter of Extradition of Yusev*, No. 12 M 727, 2013 WL 5979678, at *4 (N.D. Ill. Oct. 29, 2013) (fugitive's decision to flee from Bulgaria to the United States "permits an inference of guilt," and his conviction "*in absentia* supports a finding of probable cause in and of itself.").

37, ECF No. 11-5. Simeonov doesn't claim that the extradition request falls short in that regard, and even ignoring the extradition-favoring canon of construction, this language cannot be interpreted to encompass Simeonov's asserted requirement. As a result, Simeonov's third challenge fails.

\*   \*   \*

For the reasons stated above, Simeonov's petition for a writ of habeas corpus, ECF No. 1, is denied.

Date: September 26, 2019

John J. Tharp, Jr.
United States District Judge